CASE NO. 24-12823

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

JENNIFER SMITH,

Plaintiff-Appellant

v.

FLORIDA A&M UNIVERSITY BOARD OF TRUSTEES; ALLYSON
WATSON; DENISE D. WALLACE; LATONYA BAKER; LATRECHA SCOTT;
RICA CALHOUN; GRAY ROBINSON, P.A.; JULIE ZOLTY; RICHARD E.
MITCHELL; and SARAH REINER,

Defendants-Appellees.

APPELLANT'S TIME-SENSITIVE MOTION TO EXPEDITE APPEAL

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
No. 6:24-cv-00457-PGB-RMN

Jennifer Smith
Florida Bar No. 964514 (*pro se*)
LAW OFFICE OF JENNIFER SMITH
13506 Summerport Village Pkwy., Suite 108
Windermere, FL 34786
407-455-0712 (phone); 407-442-3023 (facsimile)
jensmithesq@aol.com
jensmithesq@yahoo.com (secondary)

Plaintiff-Appellant *pro se*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Eleventh Circuit Rule 26-1, Plaintiff-Appellant hereby files this Certificate of Interested Persons and Corporate Disclosure Statement:

1.      Jennifer Smith, Plaintiff/Appellant;

2.      Florida Agricultural & Mechanical University (FAMU), Defendant/Respondent (only served Defendant thus far);

3.      Maria Santoro, counsel for Appellee-FAMU;

4.      Teresa Ward, counsel for Appellee-FAMU;

5.      Sniffen & Spellman, P.A., Law Firm for Appellee-FAMU;

6.      Gray Robinson, P.A., former counsel for Appellee-FAMU;

7.      Richard Mitchell, former counsel for Appellee-FAMU;

8.      Julie Zolty, former counsel for Appellee-FAMU;

9.      Sarah Reiner, outside counsel for Appellee-FAMU in another matter;

10.     Paul G. Byron, U.S. District Judge for the Middle District of Florida, Orlando Division;

11.     Robert M. Norway, U.S. Magistrate Judge for the Middle District of Florida, Orlando Division;

12.    Appellant Jennifer Smith knows the Honorable Charles R. Wilson and the Honorable Robin Rosenbaum and believes their involvement with the case may be a conflict.

/s/ Jennifer Smith

# **TABLE OF CONTENTS**

Certificate of Interested Persons and Corporate Disclosure Statement………….,C1

Table of Authorities ………………………………………………….…..2

Motion to Expedite Appeal …………...………………………….………...4

Preliminary Statement ………………………………………………………...4

Background ……………………………………………………..…… 9
    I.      Appellant's Background ……………………...………………9
    II.     Appellant's Previous Lawsuits for Equal Pay……...……………... 9
    III.    Background on the Underlying Pretext and Conspiracy …...……… 10
    IV.   Relevant District Court Proceedings …………………...…….. 16

Argument ………………………………………………….…….. 19

    I.      Expedited Review is Appropriate Where Constitutional Rights Are
         Affected ………………………………………………… 19
    II.     Expedited Review is Appropriate Where the Issues Are Purely Legal
         ……………………………………………………...…...24

Conclusion …………………………………………………..…… 25

Proposed Schedule ………………………………………...…..………. 25

# TABLE OF AUTHORITIES

**CASES**

*Assaf v. University of Texas System*, 399 F. Supp. 1245 (S.D. Tex. 1975), *appeal dismissed and vacated on other grounds*, 435 U.S. 992 (1978)……………….…16

*Dobbs v. Jackson Women's Health Organization*. *See* 597 U.S. 215 (2022)………20

*Elrod v. Burns*, 427 U.S. 347, 373 (1976) …………………………………………..19

*Middleton-Keirn v. Stone,* 655 F.2d 609, 612 (5th Cir. 1981) ………………..21, 24

*Nat'l Socialist Party of Am. v. Vill. of Skokie*, 432 U.S. 43, 44 (1977) …………..23

*Reshard v. Britt*, 819 F.2d 1573, 1576 (11th Cir. 1987) ……………………..…...23

*Smith v. Florida A&M University Bd of Trustees, et al.*, No. 6:24-cv-00457-PGB-RMN (M.D. Fla. 2024)………………………………………………………………… 4

*Smith v. Florida A&M University Bd of Trustees*, No. 4:14-cv-00540 (N.D. Fla. 2014)[*Smith I]* ……………………………………………………………………….9, 10

*Smith v. Florida A&M University Bd of Trustees*, No. 4:17-cv-00065 (N.D. Fla. 2017)[*Smith II]*....……………………………………………………………………...10

*Trump v. United States*, No. 22-13005, 2022 WL 4366684 (11th Cir. 2022) ……24

*Warren v. DeSantis*, No. 4:22-cv-00302-RH-MAF, ECF No. 150 (N.D. Fla. Jan. 20, 2023) ……………………...………………………………………………………..20

*Warren v. DeSantis*, No. 23-10459 (11th Cir. 2024) …………...…………….…..19, 20

**STATUTES**

29 C.F.R. § 1620.27……………………………………………………………..21, 24

**RULES**

Federal Rule of Appellate Procedure 27.............................................................4, 25

Federal Rule of Appellate Procedure 25 ................................................................ 26

Federal Rule of Appellate Procedure 32 ……………………………………25, 26

## MOTION TO EXPEDITE APPEAL

For the reasons set forth in this Motion, Plaintiff-Appellant, Jennifer Smith ("Professor Smith") moves, pursuant to Federal Rule of Appellate Procedure 27, and this Court's Internal Operating Procedure 27.3, for expedited consideration of this appeal (24-12823) from the Order issued on August 30, 2024 by the U.S. District Court for the Middle District of Florida. *See* DC Dkt. 164 (the "Order").[1]

## PRELIMINARY STATEMENT

The instant appeal concerns the unlawful, summary termination of a decorated and tenured law professor after twenty years of service to a state university in violation of her contractual right to tenure and due process, statutory right to Equal Pay, and Constitutional rights to Equal Protection, Due Process, and Freedom of Speech and Petition. On December 5, 2023, Defendant-below Florida A&M University Board of Trustees ("Appellee" or "FAMU") issued a Notice of Intent to Terminate Professor Smith for an undefined reason - "retaliation." During the proceedings below, FAMU offered the district court seven different reasons for its termination of Professor Smith to conceal the true reason – retaliation for Professor Smith's third lawsuit against the University for equal pay. FAMU provided the following reasons for Professor Smith's termination:

---

[1] All citations to "DC Dkt." are to the district court's docket, *Smith v. Florida A&M University Bd of Trustees, et al.*, No. 6:24-cv-00457-PGB-RMN (M.D. Fla. 2024).

**Reason One**: The "substantiated finding of retaliation" via Provost-Appellee, Allyson Watson's Notice of Intent dated **December 5, 2023**. (DC Dkt. 86-6)

**Reason Two**: The "totality of circumstances" via Provost-Appellee, Allyson Watson's Notice of Termination dated **January 23, 2024**. (DC Dkt. 86-7)

**Reason Three**: "[Professor Smith's] unprofessional and inappropriate behavior towards students" via Provost-Appellee, Allyson Watson's Initial Declaration dated **March 25, 2024**. (DC Dkt. 86-14)

**Reason Four**: Professor Smith's "was unprofessional and inappropriate with students regarding the confrontation between Plaintiff and the student from the original report, and that her rivalry with a fellow College of Law professor was being internalized by students and creating a distraction" via Appellee-FAMU's Response in Opposition to the First Motion for Preliminary Injunction dated **March 25, 2024**. (DC Dkt. 86-17)

**Reason Five**: The "substantiated finding of retaliation documented in the investigative reports" via Provost-Appellee, Allyson Watson's Amended Declaration dated **April 11, 2024**.[2] (DC Dkt. 86-6)

**Reason Six**: unprofessional, and inappropriate with at least one student, in addition to engaging in a disruptive "rivalry" with another law professor via Defendant's Response to the Second Motion for Preliminary Injunction dated **April 12, 2024** (DC Dkt. 86-18)

**Reason Seven**: "Plaintiff's employment ended because she retaliated against a student for making a written complaint against her" via Defendant's Response to the Third Motion for Preliminary Injunction dated **July 22, 2024** (DC Dkt. 125)

---

[2] This declaration was amended only after Professor Smith served a Rule 11 letter on Appellee FAMU.

Despite being presented *inter alia* these clearly different reasons for Professor Smith's termination, the district court rejected all seven of FAMU's reasons and Professor Smith's suggested reason that her pretextual termination was because she filed an equal pay complaint. (DC Dkt. 151)  Instead, the district court egregiously and erroneously manufactured its own reason for Professor Smith's termination that Appellee FAMU had already found meritless:

> **Reason Eight**: "While Plaintiff contests the student's version of the encounter giving rise to the decision to terminate her employment, the student's version—corroborated by five witnesses—led Defendant FAMU to terminate Plaintiff for improper conduct. (DC Dkt. 164)

The court's conclusion is plainly wrong because FAMU's own investigative report, from  June 5, 2023, found the student and five witnesses' accounts against Professor Smith to be unsubstantiated. Despite this, the court relied on those same discredited allegations to justify its decision, which is inconsistent with the record, the operative pleading and underlying motion. The court's reasoning is flawed, as it ignored FAMU's findings, leading to an unjustified outcome. It raises serious concerns about the fairness and accuracy of the court's reasoning. The court cannot reasonably justify a conclusion based on claims that the investigating body—FAMU—has already dismissed as lacking credibility or substance. By disregarding FAMU's own investigative outcome, the court failed to apply the facts correctly, resulting in an erroneous conclusion that is unsupported by the record. This discrepancy undermines the legitimacy of the court's decision and calls for a re-evaluation of the

case, especially when the foundational evidence has already been discredited by the institution involved.[3] Most tellingly, the district court also erroneously omitted any discussion of the twenty-two days between Professor Smith's filing and FAMU's learning of Professor Smith's unserved lawsuit through a federal court filing in a separate case on November 17, 2023 and her de facto termination on December 5, 2023. Because the cause of Professor Smith's termination is a central issue in dispute, the district court's Order eliminated that factual dispute by cherry-picking its own

_____

[3] Contemporaneous with the filing of this motion, Professor Smith has filed a motion to stay the district court's proceedings because *inter alia* as those proceedings continue, the district court is causing Professor Smith irreparable injury by making unsupported factual determinations in orders, post-dating the notice of appeal. The unsupported factual findings are critical to this appeal and the related mandamus because they contradict the Order that is subject to this appeal. *See* Ex. A DC. Dkt. 175 ("A law student reported a negative interaction with the Plaintiff and asserted her belief that the Plaintiff violated the University Code of Conduct by her behavior. (Doc. 151-6, p. 6).") This statement assumes the student's report was accurate and a negative interaction in fact occurred, which is unsupported by the record. The district court's repeated intentional misrepresentation of the record is egregious, undermining the integrity of the judicial process and reflecting a clear bias that distorts the truth, thereby denying the Appellant a fair and impartial review of the facts in this matter. As evidence of the district court's inability to be impartial compare the district court's recitation of the facts/background in the case on July 3, 2024 against each order thereafter. Furthermore, the reason Appellant was allegedly terminated is central to this case, so the district court's repeated error, even upon Appellant pointing it out to the district court and pointing to the record (DC Dkt. 169), is harmful to Appellee receiving justice. Appellee has cited seven ever-changing reasons (p. 5 above), but this one the district court continues to manufacture was not one of them. In the plainest language possible – it makes no sense. The district court's ability to be impartial has been lost. The district court is literally trying to destroy Professor Smith's retaliation claim and foreclose reinstatement of her tenure. This cannot stand.

facts and effectively foreclosing Professor Smith's reinstatement, it is imperative that this appeal be expedited.

There is good cause to expedite this appeal. It involves fundamental importance to the public: A state university extinguished its own system of earned, near-indefinite academic appointment – tenure – when it terminated a tenured law professor for a manufactured and undefined cause and without meaningful opportunity to challenge the termination. The district court's erroneous decision essentially grants each state university in Florida with a license to terminate tenured faculty first and manufacture the reason(s) last. Notwithstanding the district court's short shrift dismissal of the public interest factors below, the heart of this case involves a tenured law professor's constitutional right to free speech and petition. Specifically, this dispute turns on important constitutional issues concerning the First Amendment's limits on a tenured public employee's right to speak and petition courts for redress of Equal Pay and Due Process violations, and whether a state university can silence a law professor's pursuit of Equal Protection, Due Process, and Equal Pay under the guise of an "undefined conduct" violation. Until this appeal can be heard, State employees must effectively surrender their right to free speech and petition under the First Amendment or their liberty interest in their continued employment. Both of which are clouded with doubt.

Therefore, expedited treatment is warranted.

# BACKGROUND

## I.    Appellant's Background

After clerking for a judge on the Eleventh Circuit, Appellant Jennifer Smith worked for a big law firm for ten years before teaching at Appellee-FAMU's College of Law in 2004. (District Court Docket ("DC. Dkt.") 84-21 at 1-2, 6).[4] Consistently, Appellant a tenured full professor, has been evaluated as excellent in teaching, scholarship and service. (DC. Dkt. 86-1; 84 at ¶¶ 24-25; 86-5 at ¶ 4; 86-19 at ¶ 4). Appellant's legal actions have led to significant improvements in gender pay equity and promotions at the law school. (DC. Dkt. 86-1 at 6).

## II.    Appellant's Previous Lawsuits for Equal Pay

In 2014, Appellant filed her first lawsuit against Appellee-FAMU [hereinafter, "*Smith I*"] alleging that the school discriminated against female law professors by paying them less than comparable male law professors. (DC. Dkt. 17-7). In 2015, amid-*Smith I*, Appellee-FAMU recognized a gender inequity of up to $20,000 in its law faculty salaries in its Office of Institutional Research report. (DC. Dkt. 84 at ¶ 27; 84-2 at 3, 10, 13).

In 2015, after trial counsel surprisingly waived rebuttal, *Smith I* reached a jury verdict that found sex was not a motivating factor in the determination of Smith's salary. (DC. Dkt. 17-4 and 17-7). In 2016, as a catalyst resulting from Appellant's

---

[4] Several orders (DC Dkt. 25, 31, 34, 82, 85, 124) are "paperless" or "endorsed".

lawsuit, Appellee-FAMU made significant changes to faculty salaries that created *inter alia* a lockstep salary structure. (DC. Dkt. 84 at ¶ 28).

Appellee-FAMU's law school leadership reset mostly women's salaries and, in that process, Appellant was recommended to receive a salary of $138,000 (the same salary of her male comparator in *Smith I*), but that recommendation was ultimately reduced to $125,000. (DC. Dkt. 17-7). Because of the incredulous nature of salary reset, Appellant filed her second lawsuit against Appellee-FAMU [hereinafter, "*Smith II*"]. (DC. Dkt. 17-7). *Smith II* was resolved by an Eleventh Circuit panel affirming the trial court's summary judgment order in favor of FAMU, on grounds that Appellant's pay claims were simply carry forwards of *Smith I* since Appellee-FAMU made no changes to the male comparator's or Appellant's salary that would suggest that the current disparity between them is based on sex in any way. (DC. Dkt. 17-7; *see also* 17-8).

### III. Background on the Underlying Pretext and Conspiracy

On August 9, 2021, Appellee-FAMU hired a less qualified male professor, Ewanrinareto "Areto" Imoukhuede, as a tenured full professor at the College of Law, in a similar position to the one held by Appellant. (DC. Dkt. 84 at ¶ 29). The new hire received a salary significantly higher than Appellant's, approximately $25,000 more than what would have been expected under the existing lockstep model. (DC. Dkt. 84 at ¶ 31). Upon discovering this pay disparity, Appellant emailed FAMU's

then-president, Dr. Larry Robinson, on May 9, 2022, expecting relief. (DC. Dkt. 84 at ¶ 38).

Between June 28 and September 22, 2022, Appellant engaged in FAMU's informal complaint process to report her concerns to its Equal Opportunity Program (EOP), but this did not yield any results. (DC. Dkt. 84 at ¶¶ 39-40). Consequently, on October 18, 2022, she filed a Charge of Discrimination with the U.S. EEOC under the Equal Pay Act (EPA). (DC. Dkt. 84 at ¶ 38).

Around the same time, concerns about faculty safety in the nation had been escalating with enraged, entitled students. (DC. Dkt. 84 at 2). In this context, On October 20, 2022, an enraged student then unknown to Appellant, Michelle Wanamaker Sadiki ("MW") disrupted Appellant's class, leading to a complaint by Appellant to Associate Dean of Students, Reginald Green. (DC. Dkt. 84 at ¶¶ 42-43). Green acknowledged the complaint and indicated that he would look into the matter. (DC. Dkt. 84 at ¶ 51).

Unbeknownst to Appellant, a week after this incident, MW filed a complaint against Appellant, accusing her of violence, assault, and bullying—allegations that were blatantly false and mischaracterized the encounter, and if believed, required Appellee-FAMU to take action immediately. (DC. Dkt. 84 at ¶¶ 45, 56). MW admitted to being aware that Appellant's class was in session but was upset that MW could not occupy the room to wait for her next class. (DC. Dkt. 84 at ¶ 43).

On November 1, 2022, Appellant followed up on her complaint against MW by visiting Green's office, and Green's assistant, Teresa Pissini, assured Appellant that Ms. Pissini would inform Green of Appellant's visit. (DC. Dkt. 84 at ¶ 46). However, despite the seriousness of the complaint, the fall semester ended on November 18, 2022, without any further communication from Green, leading Appellant to believe that FAMU had decided not to investigate the student's implausible allegations. (DC. Dkt. 84 at ¶ 50). Appellee-FAMU did nothing, not even seek to preserve video evidence. (DC. Dkt. 84 at ¶ 56)

On January 26, 2023, nearly 100 days after Appellant initially reported the incident and just 16 days after she submitted her rebuttal to the EEOC regarding the pay disparity, Appellee-FAMU, through La'Tonya Baker, contacted Appellant to initiate an urgent investigation into the MW incident. (DC. Dkt. 84-19, 84-20). Appellant was the sole focus of this investigation, despite her filing a complaint against MW.

Baker informed Appellant that Green had violated FAMU regulations by failing to forward her complaint to the Compliance Department for investigation, (DC. Dkt. 84 at ¶ 51), which was why Appellant's complaint was not being investigated. On February 1, 2023, Green admitted via email that he had considered Appellant's text a complaint requiring an investigation. (DC. Dkt. 84 at ¶ 52).

However, in a subsequent undated statement, Green contradicted this, claiming that he did not consider her text as a formal complaint. (DC. Dkt. 84 at ¶ 52).

Appellant became concerned about the timing of the revived complaint, suspecting it was related to her recent protected activity. (DC. Dkt. 84-20). Despite the complaint's obvious falsities and inconsistencies, which, if believed, would have necessitated an immediate investigation under state and federal law and FAMU Regulations, Appellee-FAMU chose to proceed with an extensive four-month investigation. The investigation ultimately found the student's complaint, along with the five witnesses, was absolutely meritless but used it as a pretext to discipline Professor Smith in retaliation for her protected activity, and thus, Appellee-FAMU manufactured a retaliation finding to create a false disciplinary record against Appellant. (DC. Dkt. 84 at ¶ 57).

On March 9, 2023, Appellant re-filed her original complaint, this time through the Compliance hotline, following the procedure that Green had failed to do. (DC. Dkt. 84 at ¶ 64). However, Compliance immediately deleted her resubmission. (DC. Dkt. 84 at ¶ 65). On March 13, 2023, Compliance arranged a meeting with the law deans and Appellant concerning her re-filing, interpreting it as a new complaint now that Green withdrew his statement that Appellant's text to him about the incident was a complaint, and thus Appellee-FAMU considered the re-filing retaliation against MW. (DC. Dkt. 84 at ¶¶ 68-69).

On June 5, 2023, FAMU issued a report (the "June Report") that found MW's complaint meritless but accused Appellant of retaliation for re-filing her March 9 complaint. (DC. Dkt. 84 at ¶ 57). On June 12, 2023, Appellant responded, detailing the retaliatory actions she had experienced and requesting relief. (DC. Dkt. 84-11). FAMU did not respond after Appellant's memorandum. (DC. Dkt. 84 at ¶ 81).

On July 6, 2023, FAMU Compliance authored a secret, supplemental report (the "Secret Report"), which was not shared with Appellant but circulated among various FAMU officials, including FAMU EOP and others involved in the initial investigation. (DC. Dkt. 84-6, p. 37). The Secret Report included descriptive communications Appellant had shared during the investigation to identify MW, labeling the communications as "gossip," but found no violations of FAMU policies. (DC. Dkt. 84-6, p. 40).

Appellant continued to face harassing behavior from MW, leading Appellant to express concerns about MW's behavior in an October 5, 2023 memorandum to Compliance. Appellant noted MW's unusual and concerning fixation on Appellant and raised concerns about both her own safety and MW's mental well-being. (DC. Dkt. 84-6, p. 57). FAMU did not respond to this memo. (DC. Dkt. 84 at ¶ 88).

On November 13, 2023, Professor Reyes, another FAMU law professor who had an active lawsuit against Appellee-FAMU (*Reyes v. FAMU*, No.: 6:22-cv-1525-WWB-DCI (M.D. Fla. 2022)), notified Gray Robinson, P.A. (via Sarah Reiner, Julie

Zolty and Richard Mitchell – then counsel for FAMU and named as defendants in the Corrected Second Amended Complaint ("CSAC")) of Appellant's complaint in Professor Reyes' federal court filing. (DC. Dkt. 84 at ¶ 91). Gray Robinson then notified Appellee-FAMU, and together they began the process to terminate Professor Smith for seeking equal pay. (DC. Dkt. 84 at ¶ 92).

On December 5, 2023, Appellee-FAMU notified Appellant of its intent to terminate her employment effective January 19, 2024, and it cited the June 5 report's finding of retaliation, mentioned the Secret Report, and mentioned Appellant's October 5, 2023 memorandum. (DC. Dkt. 84-6; DC. Dkt. 84 at ¶ 102). Appellant requested a conference under FAMU Regulations, which took place on January 11, 2024 before a three member panel of lawyers handpicked by Provost Allyson Watson (also a named Defendant in the CSAC). The panel recommended that FAMU rescind its intent to terminate Appellant because there was no evidence of retaliation. (DC. Dkt. 84 at ¶¶ 106, 109, 112).

Despite this recommendation, Appellee-FAMU untimely notified Appellant of the panel's report on January 23, 2024, when it rejected the recommendation and cited a new reason for her termination—the "totality of the circumstances." (DC. Dkt. 84-7). Appellant pursued two internal appeals under FAMU's Regulations. Step One affirmed her termination, and Step Two has not yet issued a report. (DC. Dkt. 84 at ¶¶ 137, 146).

Since Appellant's initial termination notice, Appellee-FAMU has continued to change the reasons for the termination and has been unable to articulate its definition of retaliation or how Appellant's conduct meets any definition of retaliation. (DC. Dkt. 84 at ¶¶ 73, 128, 129; 84-13). Audaciously, Appellee-FAMU now relies on these contrived reasons of retaliation to distinguish this case from *Assaf v. University of Texas System*, 399 F. Supp. 1245, 1245-47 (S.D. Tex. 1975), *appeal dismissed and vacated on other grounds*, 435 U.S. 992 (1978) – a virtually identical case where a professor of "impeccable character" was granted a preliminary injunction – arguing that Appellant now lacks such an impeccable background. Appellee-FAMU was unable to cite anything negative from her 20 years at the law school, and thus, it argued the district court should not use *Assaf* as persuasive. (DC. Dkt. 125 pp. 12-13). And the district court mimicked an even more egregious version of this. (DC. Dkt. 164 p. 10).

## IV.    Relevant District Court Proceedings

On March 4, 2024, this case was removed from state court to the Middle District of Florida (Orlando Division). (DC. Dkt. 1). On March 6, 2024, Appellant filed an emergency motion for a temporary restraining order ("TRO"), (DC. Dkt. 6), denied by the district court on March 8, 2024. (DC. Dkt. 10). On March 11, 2024, Appellant moved for a preliminary injunction, (DC. Dkt. 11), later stricken by the district court due to technicalities on March 29, 2024. (DC. Dkt. 34).  On March 13,

2024, Appellee-FAMU filed an unopposed motion for an enlargement of time to file a "responsive pleading" to the complaint on or before March 29, 2024 (DC. Dkt. 16), denied by the district court on March 15, 2024 (DC. Dkt. 18), requiring the parties to fight over service for the next 79 days until May 31, 2024 when Appellee-FAMU voluntarily accepted service of process. (DC. Dkt. 62).

On April 1, 2024, Appellant filed a second motion for preliminary injunction, which remained pending without a hearing scheduled for 99 days. (DC. Dkt. 37, 46, 82) On May 20, 2024, Appellant filed a time-sensitive motion for extension of time to amend the complaint and add parties. (DC. Dkt. 54). On May 31, 2024, because the district court did not rule by this deadline, Appellant re-filed her certification with the proposed amended complaint and requested that the district court instruct the clerk to docket her amended complaint. (DC. Dkt. 65). Instead, the district court struck that with the proposed amended complaint. (DC. Dkt. 71). On June 18, 2024, Appellant refiled the motion for an extension of time, attaching the proposed complaint. (DC. Dkt. 72). The complaint notified the district court in a footnote: *"This pleading was updated from prior versions and since the initial complaint was filed in October 2023 based on Defendant FAMU's continued actions, intervening administrative hearings, and to ensure the accuracy of new facts and circumstances."* (DC. Dkt. 72-1). On July 3, 2024, the Court granted Plaintiff's request to amend the First Amended Complaint on or before July 8, 2024. (DC. Dkt.

80). This was 25 days from when the district court allowed Appellant to file an amended motion to file an amended complaint. (DC. Dkt. 71, 81). Appellant filed the SAC on July 8, 2024 (DC. Dkt. 81), followed by the CSAC on July 9, 2024 because the paragraph numbering was a paragraph off. (DC. Dkt. 84). Also, on July 9, 2024, the district court mooted Appellant's second preliminary injunction, pending since April 1, 2024. (DC. Dkt. 82). On July 10, 2024, the district court accepted the CSAC (DC. Dkt. 85), and Appellant filed her third motion for preliminary injunction. (DC. Dkt. 86).

On July 24, 2024, the district court struck the SAC and CSAC for differing from the first proposed second amended complaint. Appellant then renewed her motion to amend and file the CSAC, on which the third preliminary injunction relied. (DC. Dkt. 72, 81, 84, 132, 133). On July 26, 2024, Appellant filed her Second Renewed Motion to Amend her Complaint. (DC Dkt. 133) On August 2, 2024, the district court denied two of Appellant's discovery motions, while her motion to amend her complaint was pending. (DC Dkts. 134 & 135) On August 16, 2024, the Court granted Appellant's second motion to amend her complaint. (DC Dkt. 149) On August 18, 2024, Appellant re-filed the CSAC. (DC Dkt. 151) On August 30, 2024, the Court denied Appellant's third motion for preliminary injunction, prompting the instant appeal. (DC Dkt. 164)

## ARGUMENT

Good cause exists to expedite this appeal, *see* 11th Cir. R. 27-1, IOP 3, because it primarily presents issues of constitutional law that are particularly suited for expedited treatment and that will determine the free speech rights of public employees, specifically women, throughout the State of Florida. Good cause to expedite this appeal also exists because this appeal implicates interests of prolific significance to the public because it will determine the meaning of public tenured employment and whether the liberty interest attenuated thereto can be stripped away without review.

### I. Expedited Review is Appropriate Where Constitutional Rights Are Affected

This appeal centers on whether a tenured public university professor has the right to free speech and petition when the subject matter is equal pay for women. And, whether she can be terminated under the guise and subterfuge of manufactured misconduct by the state university merely twenty-two (22) days after the university learns she has asserted that right. Because "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," *see Elrod v. Burns*, 427 U.S. 347, 373 (1976), and Professor Smith's termination eviscerated her First Amendment rights, this appeal should be expedited to undo the irreparable harm she has suffered. This Court has expedited appeals involving First

Amendment cases similar to the present case, as seen in the expedited appeal of *Warren v. Desantis*, No. 23-10459 (11th Cir. 2024).

In *Warren*, the twice-elected state attorney of Hillsborough County, Mr. Andrew Warren was removed from his position by Governor DeSantis based *inter alia* on Mr. Warren's conduct, which was in part protected by the First Amendment. On June 24, 2022, the Supreme Court announced its decision in *Dobbs v. Jackson Women's Health Organization*. *See* 597 U.S. 215 (2022). Around this time, Mr. Warren signed a Fair and Just Prosecution statement criticizing the *Dobbs* decision and he participated in a televised speech clarifying his position on Florida's H.B. 5. Within forty-one days of that Mr. Warren's protected conduct, Governor DeSantis removed him from his position – terminating Mr. Warren's employment as State Attorney for Hillsborough County. Mr. Warren sought review from the Northern District of Florida, which determined that though Mr. Warren's protected activity motivated DeSantis to carry out the termination, DeSantis would have suspended Warren based on the unprotected activity. *See Warren v. DeSantis*, No. 4:22-cv-00302-RH-MAF, ECF No. 150 (N.D. Fla. Jan. 20, 2023). Upon notice and motion for expedited briefing, this Court expedited the briefing in Mr. Warren appeal, No. 23-10459.

As Professor Smith will demonstrate in her merits briefing, FAMU has offered so many conflicting and ever-changing reasons for her termination that the

only plausible reason remains pure from the wash – her third equal pay lawsuit which FAMU learned about 22 days before Professor Smith's termination. This period is much shorter than the period presented in *Warren*, yet still the district court in *Warren* permitted him to develop his arguments in court rather than cherry picking which allegations had merit outside of a hearing. Therefore, Professor Smith's speech related termination should be viewed under a similar lens as Mr. Warren's to justify expediting this appeal.

Additionally, Circuit precedent counsels that irreparable harm is presumed in EPA cases because an EPA violation is a violation of Title VII. *E.E.O.C. v. White and Son Enterprises*, 881 F.2d 1006, 1010 (11th Cir. 1989) ("Because we conclude that plaintiff proved discrimination under the EPA, a violation of Title VII is established a fortiori.")*; See* 29 C.F.R. 1620.27(a). Because the instant appeal involves an EPA and a Title VII claim, ongoing irreparable harm is presumed and justifies expedited review. *Middleton-Keirn v. Stone,* 655 F.2d 609, 612 (5th Cir. 1981). Professor Smith will also face irreparable harm if this appeal is not expedited because the district court is biased against Professor Smith and it is unlikely to stay its proceeding, which will deprive her of her right to seek an appeal. *See Mullins v. Nickel Plate Mining Co., Inc.*, 691 F.2d 971, 974 (11th Cir. 1982) ("to hold otherwise would deprive [the party] if its right to appeal."); *Ctr. for Int'l Envtl. Law v. Office of the United States Trade Representative,* 240 F.Supp.2d 21, 22–23 (D.D.C.2003)

("This strong showing of irreparable harm—*de facto* deprivation of the basic right to appeal—further strengthens defendant's argument for a stay pending appeal."); *Larios v. Cox*, 305 F. Supp. 2d 1335, 1343 (N.D. Ga. 2004).

Finally, Professor Smith's is suffering ongoing irreparable harm from her unlawful termination which takes the form of: (1) reputational injury causing a loss of repute within the academic community, inability to complete scheduled scholarship,[5] as well as a denial of access to research resources vitally necessary to a [legal] academician; (2) loss of her health insurance and all the other benefits attendant with her job;[6] (3) loss of career advancement opportunities for deanships in the face of dubious allegations; (4) loss of her ability to secure a similar/legal job in this market; and (5) loss of her constitutional right to due process from Defendant's failure to follow the rules and regulations it was required to as articulated in Professor Smith's annual contract and its own rules/regulations.

Amid the proliferation of summary dismissal of tenured public employees,[7] the  district court's order in this case has significant implications that amount to a

---

[5] The injury caused by an inability to complete and compete legal scholarship for submission to global journals is akin to "the loss of customers and goodwill" that this Court has determined constitutes irreparable injury. *See e.g., Ferrero v. Associated Materials Inc.,* 923 F.2d 1441, 1449 (11th Cir. 1991).

[6] Professor Smith has informed Defendant FAMU that she still has not received a COBRA notice, but to no avail even as the date of this filing.

[7] *See Academic Freedom: Whose Right Is It Anyway?*, SAA LEGAL (Jan. 2, 2020), https://www.saa.legal/blog/2020/january/academic-freedom-whose-right-is-it-anyway-/[1]; Reshmi Dutt-Ballerstadt, *Universities That Fire Tenured Faculty*

chilling effect on speech by tenured public employees on issues of public concern.[8]

Unless and until this Court invalidates the termination, tenured educators, who hold

or speak views unpopular to a state university, will inevitably refrain from saying

anything or even petitioning the courts for redress. Given the irreparable harm at

stake in this appeal, expedited review is warranted as has been the case in other

appeals involving significant irreparable harm. *See Reshard v. Britt*, 819 F.2d 1573,

1576 (11th Cir. 1987); *Nat'l Socialist Party of Am. v. Vill. of Skokie*, 432 U.S. 43, 44

(1977) ("the outstanding injunction will deprive them of rights protected by the First

Amendment during the period of appellate review which, in the normal course, may

take a year or more to complete. If a State seeks to impose a restraint of this kind, it

must provide strict procedural safeguards . . . including immediate appellate

review") (internal quotations omitted).

---

*Without Due Process Are Setting a Dangerous Precedent*, INSIDE HIGHER ED (June 4, 2021), https://www.insidehighered.com/views/2021/06/04/universities-fire-tenured-faculty-without-due-process-are-setting-dangerous; Zach Greenberg, *New York Court Uses College Faculty Manual as Basis of Ruling for Terminated Tenured Faculty*, FOUND. FOR INDIVIDUAL RTS. IN EDUC. (Aug. 18, 2022), https://www.thefire.org/news/new-york-court-uses-college-faculty-manual-basis-ruling-terminated-tenured-faculty; *The AAUP Launches Investigation into Emporia State University Mass Layoffs*, AM. ASS'N OF UNIV. PROFESSORS (Oct. 6, 2022), https://www.aaup.org/media-release/aaup-launches-investigation-emporia-state-university-mass-layoffs.

[8] *See generally*, ERWIN CHEMERINSKY & HOWARD GILLMAN, FREE SPEECH ON CAMPUS 55, 65-69, 79, 111, 172 (2017).

## II. Expedited Review is Appropriate Where the Issues Are Purely Legal

The principal parties to this appeal, Professor Smith and FAMU, have briefed the underlying motion for preliminary injunction three times. While the district court made erroneous factual findings that Professor Smith plans to challenge, the instant appeal principally presents purely legal issues, so briefing should be expedited. *Cf., e.g.*, *Trump v. United States*, No. 22-13005, 2022 WL 4366684 (11th Cir. 2022), (granting a motion for an expedited appeal).

Specifically, the legal issues are: (1) whether an abridgment of a public employee's First Amendment rights constitutes irreparable harm sufficient for a preliminary injunction; (2) whether the presumption of irreparable harm in Title VII cases remains as articulated in *Middleton-Keirn v. Stone,* 655 F.2d 609, 612 (5th Cir. 1981) remains good law when only one federal district court case has questioned it; (3) whether the presumption of irreparable harm in employment discrimination cases extends to the Equal Pay Act under 29 C.F.R. 1620.27(a); (4) whether a defendant in a First Amendment retaliation action may prove the same-decision affirmative defense based on a motivation that would simultaneously violate a public employee's liberty interest in continued employment; (5) whether a defendant may prove that affirmative defense on the basis of an imputed motivation that is itself illegitimate and otherwise illegal; (6) whether reputational damages are sufficient for issuance of a preliminary injunction; and (7) whether a sworn affidavit

demonstrating reputational damages is sufficient to satisfy irreparable harm without an evidentiary hearing.

## CONCLUSION

For the foregoing reasons, good cause exists to expedite this appeal. Accordingly, Professor Smith respectfully requests expedited treatment.

## PROPOSED BRIEFING SCHEDULE

Professor Smith respectfully proposes the following schedule:

| | |
|---|---|
| Opening Brief: | 14 days |
| Opposition Brief: | 14 days |
| Reply Brief: | 7 days |
| Oral Argument: | Next available argument calendar |

/s/ Jennifer Smith
Jennifer Smith
Florida Bar No. 964514 (*pro se*)
LAW OFFICE OF JENNIFER SMITH
13506 Summerport Village Pkwy., Suite 108
Windermere, FL 34786
407-455-0712 (phone); 407-442-3023 (facsimile)
jensmithesq@aol.com
jensmithesq@yahoo.com (secondary)

## CERTIFICATE OF COMPLIANCE

I hereby certify that this document complies with the type-volume limitation set forth in Federal Rule of Appellate Procedure 27(d)(2) because it contains no more than 5,200 words, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f). This document also complies with the typeface

requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using WORD in 14-point Times New Roman.

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. App. P. 25(d) and 11th Cir. R. 28-1, I hereby certify that on September 8, 2024, I filed the foregoing document via the Court's CM/ECF system.

/s/ Jennifer Smith
Jennifer Smith, *pro se*