CASE NO. 24-12823

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

JENNIFER SMITH,
*Plaintiff-Appellant*

v.

FLORIDA A&M UNIVERSITY BOARD OF TRUSTEES; ALLYSON
WATSON; DENISE D. WALLACE; LATONYA BAKER; LATRECHA SCOTT;
RICA CALHOUN; GRAY ROBINSON, P.A.; JULIE ZOLTY; RICHARD E.
MITCHELL; and SARAH REINER,
*Defendants-Appellees.*

---

APPELLANT'S REPLY BRIEF

---

On Appeal from The United States District Court
for the Middle District of Florida, No. 6:24-cv-00457-PGB-RMN; and
The United States District Court for the Northern District of Florida,
No. 4:24-cv-00367-MW-MAF

---

Jennifer Smith
Florida Bar No. 964514 (*pro se*)
LAW OFFICE OF JENNIFER SMITH
13506 Summerport Village Pkwy., Suite 108
Windermere, FL 34786
407-455-0712 (phone); 407-442-3023 (facsimile)
jensmithesq@aol.com
jensmithesq@yahoo.com (secondary)

Plaintiff-Appellant *pro se*

## <u>AMENDED CERTIFICATE OF INTERESTED PERSONS AND</u>
## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and
Eleventh Circuit Rule 26-1, Plaintiff-Appellant hereby files this Certificate of
Interested Persons and Corporate Disclosure Statement. Entities and individuals that
have been added to the list are indicated with an asterisk (*):

1. Professor Jennifer Smith, *Plaintiff-Appellant*;

2. Florida Agricultural & Mechanical University (FAMU), *Defendant-Appellee (only responding party served below)*;

3. Shira Thomas, *Interim General Counsel to FAMU\**;

4. D. Denise Wallace, *Former General Counsel to FAMU;\**[1]

5. Maria Santoro, *counsel for Appellee-FAMU*;

6. Teresa Ward, *counsel for Appellee-FAMU*;

7. Sniffen & Spellman, P.A., *Law Firm for Appellee-FAMU*;

8. Gray Robinson, P.A., *former counsel for Appellee-FAMU*;

9. Richard Mitchell, *former counsel for Appellee-FAMU*;

10. Julie Zolty, *former counsel for Appellee-FAMU*;

---

[1] Appellee's brief misrepresented D. Denise Wallace in the Certificate of Interested Persons and Corporate Disclosure Statement as being the Vice President and General Counsel for Appellee FAMU. *See* Appellee's Brief at C3. On August 12, 2024, however, Wallace's resignation was demanded by Interim President Timothy Beard and then tendered that same week. Wallace remains an interested person in this appeal because the operative pleading plausibly alleges claims against her in her individual and official capacity.

11.      Sarah Reiner, *outside counsel for Appellee-FAMU in another matter*;

12.      Paul G. Byron, *U.S. District Judge for the Middle District of Florida, Orlando Division*;

13.      Robert M. Norway, *U.S. Magistrate Judge for the Middle District of Florida, Orlando Division*;

14.      Mark E. Walker, *U.S. District Judge for the Northern District of Florida, Tallahassee Division;*

15.      Martin A. Fitzpatrick, *U.S. Magistrate Judge for the Northern District of Florida, Tallahassee Division.*

16.      Plaintiff-Appellant, Professor Jennifer Smith knows the Honorable Charles R. Wilson and the Honorable Robin Rosenbaum and believes their involvement with the case may be a conflict.

*/s/ Jennifer Smith*

# TABLE OF CONTENTS

AMENDED CERTIFICATE OF INTERESTED PERSONS AND CORPORATE

DISCLOSURE STATEMENT ................................................................C1

TABLE OF CITATIONS ........................................................................ ii

PRELIMINARY STATEMENT ..............................................................1

ARGUMENT ...........................................................................................3

I.   THE DISTRICT COURT'S ORDER SHOULD BE REVERSED BECAUSE IT CANNOT SURVIVE DE NOVO REVIEW......................................................3

II.   THE DISTRICT COURT'S ORDER SHOULD BE REVERSED BECAUSE IT RELIES ON ERRONEOUS FACTS AND MISAPPLIES THE LAW...........5

   A.   The District Court Made Erroneous Findings of Fact. ...............................5

   B.   The District Court Misapplied the Law. ....................................................9

III.   THE DISTRICT COURT'S ORDER SHOULD BE REVERSED BECAUSE PROFESSOR SMITH SATISFIED EACH ELEMENT. .................11

CERTIFICATE OF COMPLIANCE......................................................18

CERTIFICATE OF SERVICE ..............................................................18

# TABLE OF CITATIONS

**CASES**

*Alabama v. U.S. Army Corps of Eng'rs*,
  424 F.3d 1117 (11th Cir. 2005). ....................................................................7

*All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.*,
  887 F.2d 1535 (11th Cir. 1989). ....................................................................9

*Am. C.L. Union of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*,
  557 F.3d 1177 (11th Cir. 2009). ................................................................3, 5

*Assaf v. University of Texas System*,
  399 F. Supp. 1245 (S.D. Tex. 1975)..................................................... 11, 12

*Baker v. Buckeye Cellulose Corp.*,
  856 F.2d 167 (11th Cir. 1988). .................................................... 7, 9, 10, 11

*Blaine v. N. Brevard Cnty. Hosp. Div.*,
  312 F. Supp. 3d 1295 (M.D. Fla. 2018). ....................................................13

*Bonner v. City of Prichard*,
  661 F.2d 1206 (11th Cir. 1981). ..................................................................10

*Callaway v. Block*,
  763 F.2d 1283 (11th Cir. 1985). ..................................................................15

*Canal Authority of State of Fla. v. Callaway*,
  489 F.2d 567 (5th Cir. 1974). ......................................................................16

*Don's Porta Signs, Inc. v. City of Clearwater*,
  829 F.2d 1051 (11th Cir. 1987). ....................................................................4

*Dresdner Bank AG, Dresdner Bank AG in Hamburg v. M/V OLYMPIA VOYAGER*,
  463 F.3d 1210 (11th Cir. 2006). ....................................................................5

*E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imports, Inc.*,
  756 F.2d 1525 (11th Cir. 1985) ...................................................................13

*FF Cosms. FL, Inc. v. City of Miami Beach*,
  866 F.3d 1290 (11th Cir. 2017). .....................................................................12

*Fla. Businessmen for Free Enter. v. City of Hollywood*,
  648 F.2d 956 (5th Cir. 1981). .......................................................................14

*Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A.,*
  320 F.3d 1205 (11th Cir. 2003). ......................................................................9

*Hill v. U.S. Postal Serv.*,
  961 F.2d 153 (11th Cir. 1992). ........................................................................5

*Iriele v. Griffin*,
  65 F.4th 1280 (11th Cir. 2023). .......................................................................6

*Kaimowitz v. Orlando, Fla.*,
  122 F.3d 41 (11th Cir. 1997). ..........................................................................8

*Klay v. United Healthgroup, Inc.*,
  376 F.3d 1092 (11th Cir. 2004). ..................................................................6, 7

*Kouba v. Allstate Ins. Co.*,
  No. S-77-99 LKK, 1981 WL 278 (E.D. Cal. Nov. 12, 1981). ......................10

*Leigh v. Artis-Naples, Inc.*,
  No. 2:22-CV-606-JLB-NPM, 2022 WL 18027780 (M.D. Fla. Dec. 30,
  2022). ...........................................................................................................10

*McDonald's Corporation v. Robertson*,
  147 F.3d 1301 (11th Cir. 1998). ....................................................................10

*Middleton-Keirn v. Stone*,
  655 F.2d 609 (5th Cir. 1981). ..........................................................................7

*Mitsubishi Int'l Corp. v. Cardinal Textile Sales, Inc.*,
  14 F.3d 1507 (11th Cir. 1994). ........................................................................4

*Oviedo Med. Ctr., LLC v. Adventis Health Sys./Sunbelt, Inc.*,
  No. 619CV1711ORL78EJK, 2019 WL 7423546 (M.D. Fla. Oct. 15, 2019).
  ........................................................................................................................13

*Reyes v. FAMU,*
    No. 6:22-cv-1525-WWB-DCI (M.D. Fla. 2022)............................................2

*Smith v. Neurointernational Healthcare, LLC*,
    707 F.Supp.3d 1266 (M.D. Fla. Dec. 19, 2023). ............................................6

*Solantic, LLC v. City of Neptune Beach*,
    410 F.3d 1250 (11th Cir. 2005). ....................................................15

*Storves v. Island Water Association, Inc.*,
    2010 WL 11622686 (M.D. Fla. Nov. 3, 2010)..................................... 11, 12

*Swain v. Junior*,
    958 F.3d 1081 (11th Cir. 2020). ....................................................13

*The Florida Bar v. Girley*,
    No. SC2022-0860 (Fla. filed June 15, 2022). ..............................................13

*United States by Mitchell v. Hayes Int'l Corp.*,
    415 F.2d 1038 (5th Cir. 1969). ....................................................10

*United States v. Georgia Power Co.*,
    474 F.2d 906 (5th Cir. 1973). ....................................................10

*United States v. Jefferson Cnty.*,
    720 F.2d 1511 (11th Cir. 1983). ....................................................7

*Wu v. Thomas*,
    996 F.2d 271 (11th Cir. 1993). ....................................................7

**STATUTES**

Equal Pay Act, 29 U.S.C. § 206(d). ............................................... 1, 8, 9

Title VII of the Civil Rights Act of 1964,
    42 U.S.C. § 2000e et seq. ................................................... passim

**RULES**

Eleventh Circuit Rule 26-1 ....................................................1

Eleventh Circuit Rule 28-1 ........................................................................18

Federal Rule of Appellate Procedure 25 ................................................18

Federal Rule of Appellate Procedure 26.1 ..............................................1

Federal Rule of Appellate Procedure 32 ................................................18

Federal Rules of Civil Procedure 15.................................................5, 6

Federal Rules of Civil Procedure 41.....................................................6

Rules Regulating the Florida Bar 4-8.3 .................................................13

Rules Regulating the Florida Bar 4-8.4 ................................................13

**CONSTITUTIONAL PROVISIONS**
U.S. Const. amend. I ........................................................... passim

## PRELIMINARY STATEMENT

Professor Smith aptly demonstrated in her opening brief that the district court contravened well-settled law repeatedly when it denied her motion for a preliminary injunction. The district court ignored Eleventh Circuit precedent requiring that an earlier-filed pleading be deemed nullified when a subsequent pleading is filed; disregarded Eleventh Circuit precedent commanding that district courts presume irreparable harm in Title VII and EPA cases; overlooked Eleventh Circuit precedent on irreparable harm involving the deprivation of one's First Amendment rights; refused to consider Eleventh Circuit precedent on reputational harm to employees in competitive professions; and failed to apply Eleventh Circuit precedent on the balance of harms and public interest factors merging when a governmental body is a defendant. Any one of these errors standing alone requires reversal of the district court.

Faced with the reality that neither binding law nor the actual record below supports the district court's findings, Appellee has resorted to personal attacks and misrepresenting the facts to distract this Court. No matter how Appellee attacks Professor Smith and deceptively rewrites the happenings below, three things remain clear.[2] First, binding precedent was plainly ignored. Second, Appellee offered seven

---

[2] Appellee's assertion to this Court that it had not been served with Professor Smith's state court complaint when issuing the termination notice is disingenuous. *See* Appellee's Brief at 6. Appellee's counsel in the separate and unrelated *Reyes v.*

1

different reasons for Professor Smith's termination.[3] Third, "retaliation" was never

defined resulting in Appellee remaining unable to tell Professor Smith how her

conduct qualified as "retaliation" though undefined; instead, Appellee relies on

---

*FAMU* case, are the individuals who notified Appellee of Professor Smith's complaint when they saw the complaint referenced in a *Reyes* case response. Doc. 151 at 28. Appellee's counsel in the *Reyes* case, Gray Robinson P.A., is the same firm that initially represented Appellee in Professor Smith's case before withdrawing. Docs. 119 & 120. Discovery has thus far been stalled or denied on this point. Doc. 143. Interestingly, Appellee also acknowledges that "[t]he student's charge was investigated by the Office of Compliance and Ethics ("OCE")," Appellee's Brief at 15, but Appellee omits that the investigation occurred nearly 100 days after the student made the complaint and after then-Provost Maurice Edington instructed Appellee to investigate the complaint Professor Smith had already lodged against the student on the day of the incident. Doc. 151 at 14, 16. But still, no action was taken for nearly 100 days "until shortly after Professor Smith submitted a response to the U.S. Equal Employment Opportunity Commission's ("EEOC") investigation of equal pay allegations." Doc. 151 at 3.

[3] Appellee now appears to settle on a single justification for Professor Smith's termination in its brief—retaliation against a student—a reason starkly different from the reason cited by the district court. *Compare* Appellee's Brief at 19 (Appellee stating "after a substantiated finding that Smith had retaliated against a student") *with* Doc. 164 at 10 (District Court stating "the student's version—corroborated by five witnesses—led Defendant FAMU to terminate Plaintiff for improper conduct."). Appellee's final revelation, however, now contradicts the reason cited by the district court indicating that Appellee and the district court's justifications are meritless and a clear basis for reversal. Appellee also deemed the reason cited by the district court as meritless as early as June 5, 2023. App. 291-293. To further bolster the meritless claims of retaliation that Appellee now embraces, this claim was promptly rejected by Appellee's own hand-picked three-lawyer panel in early January 2024. Doc. 86-4. This sequence of events not only highlights the shifting and unreliable nature of Appellee's position but also casts serious doubt on the legitimacy of the termination process as a whole, as well as why a hearing must have been held before deciding the preliminary injunction. At bottom, there is simply no substantiated or valid reason for Professor Smith's dismissal; likelihood of success on the merits is evident.

examples of what may constitute retaliation as a substitute for providing a definition. Adopting Appellee's position would require this Court to reject decades of established precedent. This Court should decline Appellee's invitation, reverse and remand for entry of a preliminary injunction reinstating Professor Smith to her tenured faculty position in line with decades of case law supporting that outcome.

## ARGUMENT

## I. THE DISTRICT COURT'S ORDER SHOULD BE REVERSED BECAUSE IT CANNOT SURVIVE *DE NOVO* REVIEW.

The District Court's myriad errors are properly reviewed under *de novo* review because the district court made erroneous legal conclusions that contravene Eleventh Circuit precedent as clarified in *Am. C.L. Union of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009). Appellee's suggestion that the abuse of discretion standard applies is meritless.

In *Am. C.L. Union of Fla., Inc.,* the Eleventh Circuit explained that Appellee's suggestion is merely the general rule that only generally are preliminary injunctions reviewed "for an abuse of discretion[.]" 557 F.3d at 1198. This Court further explained that *de novo* review is appropriate for "the legal conclusions on which they are based." *See id*. Moreover, "[w]here the First Amendment Free Speech Clause is involved our review of the district court's findings of 'constitutional facts,' as distinguished from ordinary historical facts, is *de novo.*" *See id*. at 1203 (citing *Don's Porta Signs, Inc. v. City of Clearwater,* 829 F.2d 1051, 1053 n. 9 (11th Cir.

1987) for the proposition that "In cases involving [F]irst [A]mendment claims, an appellate court must make an independent examination of the whole record" and "is not bound by the 'clearly erroneous' standard of review.").

Here, Appellee relies on *Mitsubishi Int'l Corp. v. Cardinal Textile Sales, Inc.*, for the flawed contention that the "abuse of discretion" standard applies in all cases involving appellate review of district court orders on preliminary injunctions. *See* 14 F.3d 1507, 1517 (11th Cir. 1994). Appellee's argument is meritless because *Mitsubishi Int'l Corp.* posed the categorical example in which the general rule applies because it involved a corporation's request for a constructive trust based on fraud stemming from a contractual, commercial relationship between Mitsubishi and Cardinal and General, as well as between Mitsubishi and SFI. *Mitsubishi*, 14 F.3d at 1519. The Court held several hearings, denied Mitsubishi's request for a constructive trust, and Mitsubishi appealed. *Id.* Because *Mitsubishi Int'l Corp.* involved a commercial transaction where monetary damages were a potential remedy, many factual determinations made at hearings, and no First Amendment claims were asserted, it is patently distinguishable from the case at bar.

Each complaint at issue below, including Professor Smith's operative Second Amended Complaint, alleged her termination was based *inter alia* on conduct and speech protected by the First Amendment. Docs. 1-1, 84, 86-3, 151. On this basis alone, the general rule articulated in *Mitsubishi Int'l Corp.* does not control this case

because *Am. C.L. Union of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.* applies.
Appellee's position should, therefore, be rejected, and a *de novo* review should be applied.

## II. THE DISTRICT COURT'S ORDER SHOULD BE REVERSED BECAUSE IT RELIES ON ERRONEOUS FACTS AND MISAPPLIES THE LAW.

### A. The District Court Made Erroneous Findings of Fact.

The district court erred when it referenced and considered the First Amended Complaint ("FAC") the operative pleading for three reasons.

First, Appellee's suggestion that Rule 15's relation back doctrine is applicable to this case is a downright incorrect understanding of Rule 15; rather *Dresdner Bank AG, Dresdner Bank AG in Hamburg v. M/V OLYMPIA VOYAGER*, 463 F.3d 1210, 1215 (11th Cir. 2006) applies and establishes that once an amended pleading is filed "the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary." Because the FAC was abandoned by the CSAC and Professor Smith's motion for preliminary injunction relied upon that new pleading, the district court was required to evaluate the CSAC. The relation back doctrine applies only when a court is determining whether a claim has accrued under the statute of limitations. *Hill v. U.S. Postal Serv.*, 961 F.2d 153, 155 (11th Cir. 1992). Further, it is clear from the record that Professor Smith's claims have accrued, Rule 15 is inapplicable, and Appellee's reliance on *Iriele v. Griffin*, 65 F.4th 1280,

1287 (11th Cir. 2023) and *Smith v. Neurointernational Healthcare, LLC*, 707 F.Supp.3d 1266, 1271–72 (M.D. Fla. Dec. 19, 2023) is gravely misplaced since neither of those cases involved questions critical to this appeal. To hold that the FAC was the operative pleading is factually and legally wrong and requires reversal. *See e.g.*, *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1107 (11th Cir. 2004) (reversing a district court's holding that the "arbitrable claims no longer presented a live case or controversy because the plaintiffs constructively dropped them from their complaint" under Rule 15 and 41 because that conclusion was *inter alia* legally wrong). Furthermore, it is unfair to Professor Smith for a district court to cherry-pick allegations from different complaints for different parts of a preliminary injunction to deny the preliminary injunction. This creates inconsistency in the claims before the court, undermines the clarity and coherence of Professor Smith's case, and forces her to defend against a fragmented and shifting legal framework. This would clearly lead to bad law. Finally, the district court's reliance on the FAC is procedurally unsound and legally questionable. The CSAC, initially filed as Document 84, which is identical to the subsequently filed Document 151, was already the operative pleading at the time the motion for preliminary injunction (Doc. 86) was filed. Given this sequence, it was improper and contrary to established legal principles for the district court to base its decision on the superseded FAC rather than the operative CSAC, which controlled the litigation at that stage—

indeed, the CSAC was attached to the preliminary injunction (Doc. 86) as Exh. 3, which Professor Smith had reason to believe was the complaint the district court would rely upon for its decision. Appellee emphasized that the preliminary injunction and CSAC were filed on the same day. While true, there remains a clear sequence: the CSAC was accepted by the district court *before* the preliminary injunction was filed, which is why the CSAC was able to be attached to the preliminary injunction. The district court's procedural blunder should not distract this Court from the central purpose of granting a preliminary injunction.

Second, Professor Smith was prejudiced by the district court's reliance on the FAC because there is a reasonable likelihood that the outcome would have been different as the CSAC contained a Title VII claim, which entitled Professor Smith to the presumption of irreparable harm. *Middleton-Keirn v. Stone*, 655 F.2d 609, 611 (5th Cir. 1981); *United States v. Jefferson Cnty.*, 720 F.2d 1511, 1520 (11th Cir. 1983); *Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167, 169 (11th Cir. 1988); *Wu v. Thomas*, 996 F.2d 271, 273 n.3 (11th Cir. 1993). As evidence of the prejudice, this Court has long recognized that preliminary relief cannot be granted on claims not asserted in the complaint. *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1134 (11th Cir. 2005) ("injunctive relief must relate in some fashion to the relief requested in the complaint."); *Klay*, 376 F.3d 1112 ("Put another way, the plaintiffs had not stated any legally cognizable claim upon which they could have any

likelihood of success on the merits at all."); *Kaimowitz v. Orlando, Fla.*, 122 F.3d 41, 43 (11th Cir. 1997) ("A district court should not issue an injunction when the injunction in question is not of the same character, and deals with a matter lying wholly outside the issues in the suit."). While the FAC did not contain a Title VII claim (but it did include an EPA claim that likewise triggered the presumption as argued in the opening brief), the CSAC did, which crystallizes how harmful the district court's error was to Professor Smith because the district court used that finding to deny her the presumption of irreparable harm. Doc. 164. Despite Appellee's meritless suggestion to the contrary, it is unsupported by the law of this Circuit.

Third, the district court made other factual findings that are unsupported by the record that must be reversed because Appellee has offered no argument to the contrary. Those factual findings were (1) "This case is not only about the Plaintiff's speech in standing up for equal pay; it also involves termination based on a finding that the Plaintiff retaliated against a student." Doc. 164 at 10; (2) "While Plaintiff contests the student's version of the encounter giving rise to the decision to terminate her employment, the student's version—corroborated by five witnesses—led Defendant FAMU to terminate Plaintiff for improper conduct." Doc. 164 at 10; and (3) "Forcing Defendant FAMU to reinstate the Plaintiff also forces students enrolled at FAMU to attend classes taught by the Plaintiff." Doc. 164 at 10. Each of these

factual determinations is unsupported by the record since the district court failed to hold a hearing, *see Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A.,* 320 F.3d 1205, 1211 (11th Cir. 2003); *All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.,* 887 F.2d 1535, 1538–39 (11th Cir. 1989), or explicitly state the reasons why it believed Professor Smith's allegations were less believable than the report attached to the complaint, which she disaffirms as pretext.

### B.     The District Court Misapplied the Law.

The district court misapplied the law because Title VII and the EPA independently guarantee a presumption of irreparable harm.

While Appellee correctly notes that the presumption of irreparable harm in Title VII cases "is not absolute[,]" Appellee incorrectly articulates the limitations to the presumption. Generally, "courts are to presume irreparable harm in Title VII cases." *Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167, 169 (11th Cir. 1988). That presumption can, however, be overcome if an employer makes an adequate showing at the hearing on a motion for preliminary injunction. *See id.* Appellee's suggestion that the presumption "is only extended to cure a continuing discriminatory practice" is unsupported by any Eleventh or former-Fifth Circuit case discussing the presumption. In fact, Appellee's argument is plainly contradicted by decisions of the former Fifth Circuit which explained that the presumption is to be applied to remedy past discrimination. *See United States by Mitchell v. Hayes Int'l Corp.*, 415 F.2d

1038, 1040 (5th Cir. 1969) ("The complaint requested that the company be permanently enjoined from continuing such violations and from failing to take reasonable steps to correct the effects of past discriminatory practices."); *United States v. Georgia Power Co.*, 474 F.2d 906, 927 (5th Cir. 1973) ("Full enjoyment of Title VII rights sometimes requires that the court remedy the present effects of past discrimination.").[4] As argued in Professor Smith's opening brief, *Leigh v. Artis-Naples, Inc.*, No. 2:22-CV-606-JLB-NPM, 2022 WL 18027780 (M.D. Fla. Dec. 30, 2022) was wrongly decided because it confused the employment and trademark presumptions of irreparable harm and compounded that error by reading *McDonald's Corporation v. Robertson*, 147 F.3d 1301 (11th Cir. 1998) as limiting *Baker*. Appellee has found no other decision to support *Leigh*'s legal conclusions because that case was wrongly decided, and courts routinely apply the presumption of irreparable harm in employment discrimination cases. *See Kouba v. Allstate Ins. Co.*, No. S-77-99 LKK, 1981 WL 278, at *1 n.1 (E.D. Cal. Nov. 12, 1981) (collecting cases).

Because the district court misapplied the law on presumptions of irreparable harm, it must be reversed.

---

[4] *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (adopting as binding precedent all decisions of the former Fifth Circuit made before October 1, 1981).

## III. THE DISTRICT COURT'S ORDER SHOULD BE REVERSED BECAUSE PROFESSOR SMITH SATISFIED EACH ELEMENT.

The Court erred in a number of ways when it concluded that Professor Smith's reputational harm was insufficient to satisfy irreparable harm, and that public interest disserved her reinstatement to restore the status quo ante.

First, and as discussed above, this Circuit recognizes a presumption of irreparable harm in Title VII cases that is limited by many things that do not include, as Appellee suggests, whether "active retaliation has ceased." Because the only limitation of the presumption is whether the employer has rebutted the presumption, Appellee's argument to the contrary is meritless. *See Baker*, 856 F.2d at 169.

Second, Professor Smith has established irreparable harm based on her "loss of repute within the academic community" as articulated in *Assaf v. University of Texas System*, 399 F. Supp. 1245, 1245–47 (S.D. Tex. 1975). Specifically, Professor Smith's sworn declarations demonstrate she could not finish an article that was accepted for publication by a journal. Doc. 86-19 at 2. Appellee has offered no evidence on the record below to contradict Professor Smith's evidence. Nor did the district court hold a hearing to ascertain the prestige of the journal to which she owed an article. Appellee purports to rely on *Storves v. Island Water Association, Inc.*, 2010 WL 11622686, at *4 (M.D. Fla. Nov. 3, 2010) to distinguish *Assaf*. However, *Storves* is inapplicable because the employee sought preliminary relief but had not

only been allowed to continue using resources provided by the defendant but had also taken an extended vacation before returning to her job without a learning curve. The record below demonstrates that, as the district court gratuitously characterized it, Professor Smith was not allowed to "step foot" on the law school campus, a campus that houses a public law library with free legal research for its visitors, and that Professor Smith was locked out of her legal research accounts and software during the pendency of the litigation. Therefore, this case is more akin to *Assaf* than *Storves,* and the district court should be reversed for this reason alone.

Third, Professor Smith's injuries are neither speculative nor re-compensable with monetary damages. This Court has long recognized that "an ongoing violation of the First Amendment constitutes an irreparable injury." *FF Cosms. FL, Inc. v. City of Miami Beach*, 866 F.3d 1290, 1298 (11th Cir. 2017). Professor Smith's deprivation of her speech and petition alone are sufficient to establish irreparable harm, especially since Appellee does not counter Professor Smith's legal position confirming this point. Even still, Professor Smith's sworn declarations demonstrate that she was interviewed for a position that she did not receive after the interviewers learned of her unresolved employment status with Appellee. Appellee offered no evidence to contradict or cast doubt upon Professor Smith's evidence. Nor did the district court hold a hearing to evaluate whether the position Professor Smith applied for was of the same character as her professorship. To the extent Appellee relies on

*Oviedo Med. Ctr., LLC v. Adventis Health Sys./Sunbelt, Inc.*, No. 619CV1711ORL78EJK, 2019 WL 7423546 (M.D. Fla. Oct. 15, 2019), it is patently distinguishable because it involved the *E. Remy Martin* presumption that applies in cases of trademark infringement.

Fourth, the severity of Professor Smith's reputational harm is further bolstered by the fact that Rules 4-8.3 and 4-8.4 of the Rules Regulating the Florida Bar mandate reporting of misconduct. Neither Appellee nor the district court offered any case, situation, or professional interpretation to distinguish the applicability of these rules. However, the Florida Bar has recently made clear these rules are catchall provisions, and it intends to prosecute violations of these rules. *See e.g., The Florida Bar v. Girley*, No. SC2022-0860 (Fla. filed June 15, 2022). Because misconduct is reportable, Professor Smith's for-cause termination is directly analogous to the for-cause termination in *Blaine v. N. Brevard Cnty. Hosp. Div.*, 312 F. Supp. 3d 1295 (M.D. Fla. 2018). The district court's decision to the contrary must be reversed.

Fifth, Professor Smith correctly explained in her opening brief that the third and fourth elements merge where, as here, the government is the opposing party. *Swain v. Junior*, 958 F.3d 1081, 1091 (11th Cir. 2020). Professor Smith's lawsuits exemplify the power of impact litigation to address systemic inequities and effect meaningful change, advancing the public interest by promoting fairness, establishing crucial legal precedents, and fostering institutional reforms. Her 2014 case was the

catalyzst that triggered Appellee's acknowledgment of significant gender pay disparities later revealed in its 2015 salary study. Professor Smith obtained this study through a public records request after trial, following its initial disclosure to her by a disgruntled trial witness. Doc. 1-1 at 3. Because the 2014 case caused an equity study to be performed, that case served as the impetus for Appellee awarding immediate increases in compensation and promotions for women at the law school in 2016, including Professor Smith. Doc. 1-1 at 3. These actions directly addressed the inequities she sought to rectify and underscore the broader societal importance of her advocacy, which unequivocally served the public interest. Therefore, no government interest is served by enabling the abridgment of one's constitutional and statutory rights. *See e.g., Fla. Businessmen for Free Enter. v. City of Hollywood*, 648 F.2d 956, 959 (5th Cir. 1981) ("The public interest does not support the city's expenditure of time, money, and effort in attempting to enforce an ordinance that may well be held unconstitutional.").

Sixth, Professor Smith also established a likelihood of success on each of her claims because she has proffered strong evidence in support of allegations within the complaint that have gone uncontradicted by Appellee. This Court should evaluate likelihood of success on the merits because any further delay only seeks to continue the deprivation of Professor Smith's loss of statutory and First Amendment rights. *See e.g., Solantic, LLC v. City of Neptune Beach*, 410 F.3d 1250, 1272 (11th Cir.

2005) ("[W]e do not think it necessary or prudent to confine our opinion to holding that Solantic has shown a likelihood of success on the merits, when it is altogether clear that Solantic will succeed on the merits of its First Amendment claims."); *Callaway v. Block*, 763 F.2d 1283, 1287 n.6 (11th Cir. 1985) ("We thus conclude that we have jurisdiction to reach the merits of some of appellants' claims, and that, under the circumstances, we should exercise our discretion and rule on those claims now.").

Appellee has acknowledged that this case remains in its early stages—indeed, Appellee acknowledges that an answer to the complaint has yet to be filed. Moreover, Appellee has conceded Professor Smith's expertise as a professor of federal civil procedure. Given these circumstances, it is entirely reasonable—yet irrelevant and it is even peculiar for Appellee to mention or be so enamored with whether Professor Smith, a lawyer, has retained legal counsel—particularly given her background in employment law.[5] The procedural posture of this case, combined with the facts at issue, underscores the appropriateness of granting a preliminary

---

[5] Strangely, Appellee's counsel has even mentioned Professor Smith's 2014-15 trial counsel (based in Tallahassee) and her subsequent counsel, her brother (based in New Orleans), to the magistrate judge in Orlando during August 2024 discovery hearings—entirely irrelevant points in that context and a distraction from the issues at hand then too. Despite Appellee's repeated attempts apparently to mar her record before each decision-maker, Professor Smith has had a stellar 30-year career as both a lawyer and law professor. Doc. 86-1.

injunction and serves precisely to fulfill its purpose: to maintain or restore the status quo and prevent irreparable harm while a case proceeds. *See Canal Authority of State of Fla. v. Callaway,* 489 F.2d 567, 576 (5th Cir. 1974):

> It must not be thought, however, that there is any particular magic in the phrase 'status quo.' The purpose of a preliminary injunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits. … If the currently existing status quo itself is causing one of the parties irreparable injury, it is necessary to alter the situation so as to prevent the injury, either by returning to the last uncontested status quo between the parties, … by the issuance of a mandatory injunction, … or by allowing the parties to take proposed action that the court finds will minimize the irreparable injury. The focus always must be on prevention of injury by a proper order, not merely on preservation of the status quo.

Contrary to Appellee's assertions, this case is neither complex nor confusing (Appellee's Brief at 2); at its core, it is a relatively straightforward employment case with a few noteworthy twists, including procedural decisions that have shaped and prolonged the case's trajectory—highlighting the district court's failure to apply well-established legal principles. For the foregoing reasons, this Court should reverse the district court and remand with instructions to enter a preliminary injunction restoring Professor Smith to her tenured position.

December 18, 2024

/s/ Jennifer Smith
Jennifer Smith
Florida Bar No. 964514 (*pro se*)
LAW OFFICE OF JENNIFER SMITH
13506 Summerport Village Pkwy.,
Suite 108
Windermere, FL 34786
407-455-0712 (phone);
407-442-3023 (facsimile)
jensmithesq@aol.com
jensmithesq@yahoo.com (secondary)

## CERTIFICATE OF COMPLIANCE

I hereby certify that this document complies with the type-volume limitation set forth in Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains no more than 6,500 words, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f). This document also complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using WORD in 14-point Times New Roman.

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. App. P. 25(d) and 11th Cir. R. 28-1, I hereby certify that on December 18, 2024, I filed the foregoing document via the Court's CM/ECF system, which will serve it on opposing counsel.

/s/ Jennifer Smith
Jennifer Smith, *pro se*