**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 24-12823
Non-Argument Calendar

————————————————

JENNIFER M. SMITH,

*Plaintiff-Appellant,*

*versus*

FLORIDA AGRICULTURAL AND MECHANICAL
UNIVERSITY BOARD OF TRUSTEES,
ALLYSON WATSON,
   individually and in her official capacity,
DENISE D. WALLACE,
   individually and in her official capacity,
LATONYA BAKER,
   individually and in her official capacity,
LATRECHA SCOTT,
   individually and in her official capacity, et al.,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket Nos. 4:24-cv-00367-MW-MAF,
6:24-cv-00457-PGB-RMN

_____

Before NEWSOM, GRANT, and BRASHER, Circuit Judges.

PER CURIAM:

Jennifer Smith, proceeding pro se, appeals the district court's denial of her motion for a preliminary injunction to reinstate her as a tenured law professor at the Florida Agricultural & Mechanical University College of Law (FAMU Law). Smith alleges (1) violations of the Equal Pay Act and Title VII of the Civil Rights Act, (2) breach of contract, (3) First Amendment retaliation, and (4) state and federal due process claims against FAMU and various university officials and employees. The district court denied Smith's motion for preliminary injunctive relief to reinstate her on the grounds (1) that she hadn't demonstrated irreparable harm and (2) that an injunction wouldn't harm the public interest. Smith contests both grounds on appeal. After careful consideration, we **AFFIRM**.

**I**

**A**

While Smith was a tenured professor at FAMU Law, she lodged a complaint with FAMU alleging that a male professor who performed "substantially equal work in terms of skill, effort, and responsibility, under similar working conditions," was paid $25,000 more than her each year. After FAMU denied the existence of a

pay gap, Smith filed a Charge of Discrimination under the Equal Pay Act with the Equal Employment Opportunity Commission (EEOC), on October 18, 2022.

Two days after she filed the Charge, an incident occurred between her and a student. The facts surrounding this incident are disputed. According to Smith, an unknown student, "unprovoked and enraged," "barged into [her] class in progress to demand that she be allowed to sit to prepare for another class scheduled later that morning." Corrected Second Am. Compl., Aug. 18, 2024, at 2, Dkt. No. 151. Smith instructed the student to leave. *Id.* ¶ 45. The student then stood right outside the classroom, "awaiting an opportunity to re-confront Professor Smith." *Id.* After Smith left the classroom, she sent a text message to the Associate Dean of Students describing the student's "aggressively rude" behavior towards her. *Id.* ¶ 43. Smith believed that her text message constituted a formal complaint. *Id.* ¶ 42–43.

The student remembered the incident differently. According to the student, she entered her "usual classroom" five minutes before class. Notice of Intent to Dismiss from Employment, Dec. 5, 2023, at 7, Dkt. No. 151–6. The classroom was empty except for Smith, who insisted she leave, so she waited in the hall. *Id.* When Smith emerged from the classroom, she stopped directly in front of the student and reprimanded her, beginning a verbal altercation. *Id.* The student reported the incident to the Associate Dean of Academic Affairs a week later, on October 27, 2022.

Three months later, on January 26, 2023, Smith learned that FAMU was investigating her for the student's complaint about the classroom incident.  She also learned that the Associate Dean of Students had never investigated her text message about the incident because he didn't consider it to be a formal complaint.  Smith found the timing of FAMU's investigation suspicious.  Because the EEOC proceeding was ongoing at this time, Smith believed that FAMU "suddenly reviv[ed]" the student's complaint, after ignoring her text message to the Dean of Students and sitting on the student's complaint for three months, to retaliate against the recent filing of her rebuttal in the EEOC proceeding.

A month and a half later, on March 9, 2023, Smith filed a complaint through FAMU's Compliance and Ethics Hotline to report that "a student knowingly and intentionally disrupted her class on October 20, 2022."  *Id.* at 18.  Ultimately, FAMU's Office of Compliance and Ethics concluded that this complaint constituted retaliation against the student because it found that she had complained to the hotline to force the student to report it on her bar application.  FAMU terminated Smith on January 30, 2024.

**B**

As relevant here, Smith filed her First Amended Complaint in state court on January 29, 2024.  After removing the suit to federal court, FAMU moved to dismiss the complaint, prompting Smith to seek leave to amend it.  Leave granted, Smith filed both a

24-12823                Opinion of the Court                5

Second Amended Complaint and a renewed motion for prelimi-nary injunction to reinstate her at FAMU Law.[1]

The district court granted FAMU's motion to strike the Sec-ond Amended Complaint on the ground that it differed from the version attached to Smith's motion for leave to amend.  Smith again sought leave to amend, which the district court granted. Smith then filed the Corrected Second Amended Complaint—the current operative complaint.  Dkt. No. 151.

The district court denied Smith's motion for a preliminary injunction.  The district court determined that Smith wasn't enti-tled to a preliminary injunction because she failed to show (1) that she would suffer irreparable harm absent the injunction, or (2) that an injunction be in the public interest.[2]  This is Smith's appeal.

## II

"We review a district court's denial of a preliminary injunc-tion for abuse of discretion." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1247 (11th Cir. 2016).  In that context, a "district court abuses its discretion when its factual findings are clearly erroneous, when it follows improper procedures, when it applies the incorrect

---

[1] Smith's preliminary-injunction motion was renewed because she had twice before moved for a preliminary injunction.  The first was denied for violating the Middle District of Florida's Local Rules.  The second was denied as moot because of the filing of her Second Amended Complaint.

[2] Because the district court determined that Smith's failure to meet either of those grounds doomed her preliminary-injunction motion, the court opted not to address her likelihood of success on the merits.

legal standard, or when it applies the law in an unreasonable or in-correct manner." *Id.*

To obtain a preliminary injunction, the plaintiff must show (1) a substantial likelihood of success on the merits; (2) irreparable harm to the plaintiff absent an injunction; (3) that the threatened injury to the plaintiff outweighs any injury the injunction may cause the defendant; and (4) that the injunction would not be ad-verse to the public interest. *Id.* "A preliminary injunction is an extraordinary and drastic remedy" requiring the plaintiff to "clearly establish all four of these prerequisites." *Id.* (internal quotation marks omitted). Failure to meet even one of the prerequisites "dooms" the appeal. *Id.* at 1248.

## A

We begin with irreparable harm. An injury is "'irreparable' only if it cannot be undone through monetary remedies." *Yorktown Sys. Grp. v. Threat Tec LLC*, 108 F.4th 1287, 1296 (11th Cir. 2024). A "preliminary injunction is completely at odds with a sanction for past conduct that may be addressed by adequate remedies at law." *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1133 (11th Cir. 2005).

The district court didn't abuse its discretion in finding that Smith wouldn't suffer irreparable harm absent an injunction. In *Van Arsdel v. Texas A&M University*, the old Fifth Circuit held that a preliminary injunction was improperly granted to reinstate a for-mer tenured professor who resigned under duress. 628 F.2d 344,

345–46 (5th Cir. 1980).[3] Because "reinstatement after trial, coupled with back pay, would suffice to redress [his] alleged wrong," the court determined that the professor didn't suffer an irreparable injury. *Id.* at 346.

Like the professor in *Van Arsdel*, Smith is a former tenured professor at FAMU Law seeking reinstatement as preliminary injunctive relief. And as in *Van Arsdel*, Smith's injury is redressable post-trial with reinstatement and back pay, so Smith won't suffer irreparable harm in the absence of an injunction.

Smith contends that she is entitled to a presumption of irreparable harm, which attaches to some Title VII claims. But the operative complaint at the time she filed the preliminary-injunction motion was the First Amended Complaint, which didn't contain a Title VII claim. Dist. Ct. Order, Aug. 30, 2024, at 7. Though Smith argues that the district court should have instead considered the Corrected Second Amended Complaint, which does contain a Title VII claim, that wasn't the complaint on which the preliminary-injunction motion was based.[4]

---

[3] The decisions of the former Fifth Circuit before October 1, 1981 are binding precedent. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

[4] Due to "numerous procedural missteps," Smith did not properly file the Corrected Second Amended Complaint until August 16, 2024, more than a month after she renewed her preliminary-injunction motion. Dist. Ct. Order, Aug. 30, 2024, at 5 n.3. As the district court stated, FAMU "has a right to know which version of the Complaint is operative before responding to a motion for injunctive relief." *Id.*

Smith also argues that the district court failed to consider her First Amendment injuries in assessing irreparable harm. She asserts that she engaged in protected speech by "filing a lawsuit to remediate equal pay concerns for women faculty." Br. of Appellant at 34. Without diving into the merits of Smith's First Amendment claim, however, we agree with the district court that "context matters." Dist. Ct. Order, Aug. 30, 2024, at 10. "This case is not only about [Smith's] speech in standing up for equal pay; it also involves termination based on a finding that [she] retaliated against a student." *Id.* Retaliation against a student was against FAMU's policy and would be an independent basis for her termination.

The district court thus didn't abuse its discretion in denying Smith's preliminary-injunction motion on the basis that she failed to establish irreparable harm.

**B**

Smith's argument that the district court erred in its analysis of the public-interest prong also fails. When a party moves for a preliminary injunction against the government, the third and fourth prerequisites—(3) whether the threatened injury to the plaintiff outweighs any injury the injunction may cause the defendant, and (4) whether the injunction would be adverse to the public interest—effectively "merge." *Swain v. Junior*, 958 F.3d 1081, 1091 (11th Cir. 2020). The "State's interest and harm . . . *are*[] 'the public interest.'" *Mills v. Hamm*, 102 F.4th 1245, 1251 (11th Cir. 2024) (emphasis in original) (quoting *Swain*, 958 F.3d at 1091).

Smith argues that the district court failed to treat the final two preliminary injunction factors as "merged." Although the district court didn't expressly say so, its analysis actually merged the two factors. It weighed Smith's First Amendment injuries against the proposed injunction's harm to the public interest. Finding that granting the injunction would "force[] students enrolled at FAMU to attend classes taught by [Smith]" after she was terminated for "improper conduct," the court properly determined reinstatement was "contrary to public policy." Dist. Ct. Order, Aug. 30, 2024, at 10.

*          *          *

The district court's denial of Smith's motion for preliminary injunction is **AFFIRMED.**